1

2

3

4

5

6

7

8

9

10              **IN THE UNITED STATES DISTRICT COURT**

11           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

12

13
TRUSTEES ON BEHALF OF THE                    CASE NO. CV F 12-0187 LJO BAM
14   NORTHERN CALIFORNIA GENERAL
TEAMSTERS SECURITY FUND,                 **ORDER ON DEFENDANTS' F.R.Civ.P. 12**
15                                            **MOTION TO DISMISS**
                    Plaintiff,              (Doc. 16.)
16
        vs.
17
FRESNO FRENCH BREAD BAKERY,
18   INC., et al.,

19                   Defendants.

20   _____/

21                        **INTRODUCTION**

22          Defendants seek to dismiss as legally barred and preempted by federal law plaintiff employee

23   benefit plan trustees' claims arising from payment of medical benefits for defendant Alvin Lewis' ("Mr.

24   Lewis'") daughter Sheila LeFevre ("Ms. LeFevre"), who was ineligible for medical benefits.   The

25   plaintiff trustees respond that they seek appropriate equitable relief under the Employee Retirement

26   Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq., and that ERISA does not preempt their state

27   law claims.   Mr. Lewis and defendant Fresno French Bread Bakery, Inc. ("FFBB") style their motion

28   as proceeding under F.R.Civ.P. 12(b)(6), although Mr. Lewis and FFBB (collectively "defendants") filed

                                              1

an answer prior to their F.R.Civ.P. 12(b)(6) motion to dismiss.  As such, this Court will treat defendants' motion as a F.R.Civ.P. 12(c) motion for judgment on the pleadings.[1]  This Court considered defendants' motion on the record and VACATES the July 30, 2012 hearing, pursuant to Local Rule 230(g).  For the reasons discussed below, this Court DISMISSES with leave to amend the plaintiff trustees' ERISA surcharge claim and DENIES dismissal of their other claims.

## BACKGROUND[2]

### Summary

The Northern California General Teamsters Security Fund ("fund") administers an employee benefits plan ("plan") which the trustees manage.  FFBB produces baked goods for retail and commercial sale, and Mr. Lewis is FFBB's sole shareholder and chief executive officer.  The FAC alleges ERISA equitable restitution and surcharge claims and California fraud claims to recover medical benefit payments for which trustees claim Ms. LeFevre as ineligible under the plan.  Defendants challenge the claims as barred by ERISA.  The trustees respond that they have properly pled their claims.

### The Plan

FFBB is party to a collective bargaining agreement ("CBA") which requires FFBB to provide health benefits to FFBB's drivers and route salesmen who work more than 80 hours per month.  The fund allows FFBB to provide health benefits to non-collectively bargained employees.  Fund rules provide: "Coverage of non-bargaining unit employees shall be maintained by the employer through monthly contributions in the same manner and under the same terms and conditions as provided for bargaining unit employees of the employer under the collective bargaining agreement."

FFBB is also a party to a subscriber agreement that establishes fund participation terms and grants a power of attorney to the fund to administer the fund for FFBB.

---

[1]       A F.R.Civ.P. 12(b)(6) "motion must be made *before* the responsive pleading." *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004) (emphasis in original).  However, a post-answer motion to dismiss for failure to state a claim may be treated as a motion for judgment on the pleadings under F.R.Civ.P. 12(c).  *Elvig*, 375 F.3d at 954 (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980) (per curiam)).

[2]       The factual recitation is derived generally from the First Amended Complaint ("FAC") of plaintiff Trustees on Behalf of the Northern California General Teamsters Security Fund ("trustees") as well as matters which this Court may consider on a F.R.Civ.P. 12(c) motion.

1

**Health Benefits For Ms. LeFevre**

2     The fund sent FFBB monthly billing statements to list employees for whom FFBB paid a

3  contribution the prior month.  FFBB submitted its monthly contributions to the fund with its monthly

4  billing statements.

5     In October 2009, FFBB added Ms. LeFevre's name to FFBB's billing statement and remitted a

6  contribution for her.  FFBB also paid a contribution to the fund for Ms. LeFevre for November and

7  December 2009 during which Ms. LeFevre obtained medical treatment from several providers totaling

8  $320,244.50 and which the fund paid.

9     Ms. LeFevre was ineligible for health benefits in that she was neither a collectively bargained

10 employee nor a non-collectively bargained employee who worked more than 80 hours per month.  After

11 the fund learned that Ms. LeFevre was ineligible for health benefits, it obtained partial refunds but a

12 $263,135.24 balance remains which the trustees seek to recover from defendants.

13     **The Trustees' Claims**

14     The FAC alleges that this is "an action by the fiduciaries of an employee benefit plan for

15 appropriate equitable relief."  The FAC alleges against defendants a (first) ERISA equitable restitution

16 claim under 29 U.S.C. 1132(a)(3) and (third) fraudulent deceit and (fourth) negligent misrepresentation

17 claims that defendants misrepresented Ms. LeFevre's eligibility to induce the fund to pay $263,135.24

18 which remains unreturned from medical providers.  The FAC alleges against Mr. Lewis a (second)

19 ERISA surcharge claim that his reporting Ms. LeFevre as fund eligible breached trust and fiduciary

20 duties to other fund participants.

21     **DISCUSSION**

22     **F.R.Civ.P. 12(c) Motion For Judgment On The Pleadings Standards**

23     Defendants argue that they are not plan fiduciaries and thus are not liable for a restitution or a

24 surcharge under ERISA, which defendants further contend preempts the FAC's fraud claims.  The

25 trustees respond that they seek "appropriate equitable relief" under ERISA which does not preempt the

26 California fraud claims.

27     F.R.Civ.P. 12(c) permits a party to seek judgment on the pleadings "[a]fter the pleadings are

28 closed – but early enough not to delay trial."  "A motion for judgment on the pleadings should be granted

3

1   where it appears the moving party is entitled to judgment as a matter of law." *Geraci v. Homestreet*

2   *Bank*, 347 F.3d 749, 751 (9ᵗʰ Cir. 2003). A "judgment on the pleadings is appropriate when, even if all

3   allegations in the complaint are true, the moving party is entitled to judgment as a matter of law."

4   *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9ᵗʰ Cir. 1993).

5       "A judgment on the pleadings is a decision on the merits." *3550 Stevens Creek Associates v.*

6   *Barclays Bank of California*, 915 F.2d 1355, 1356 (9ᵗʰ Cir. 1990), *cert. denied*, 500 U.S. 917, 111 S.Ct.

7   2014 (1991). A F.R.Civ.P. 12(c) motion "is designed to dispose of cases where the material facts are not

8   in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and

9   any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5ᵗʰ Cir.

10  1990) (per curiam). "[T]he central issue is whether, in light most favorable to the plaintiff, the complaint

11  states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5ᵗʰ Cir. 2001).

12      Courts dismiss complaints under F.R.Civ.P. 12(c) for either of two reasons: "(1) lack of a

13  cognizable legal theory, or (2) insufficient facts under a cognizable legal theory." *Gutierrez v. RWD*

14  *Technologies, Inc.*, 279 F.Supp.2d 1223, 1224 (E.D. Cal. 2003). The standards for deciding F.R.Civ.P.

15  12(b)(6) and F.R.Civ.P. 12(c) motions are the same. *Great Plains Trust v. Morgan Stanley Dean Witter*,

16  313 F.3d 305, 313, n. 8 (5ᵗʰ Cir. 2002). "A Rule 12(c) motion challenges the legal sufficiency of the

17  opposing party's pleadings and operates in much the same manner as a motion to dismiss under Rule

18  12(b)(6)." *Morgan v. County of Yolo*, 436 F.Supp.2d 1152, 1154-1155 (E.D. Cal. 2006).

19      "When considering a motion for judgment on the pleadings, this court may consider facts that

20  'are contained in materials of which the court may take judicial notice.'" *Heliotrope General, Inc. v.*

21  *Ford Motor Co.*, 189 F.3d 971, 981, n. 18 (9ᵗʰ Cir. 1999) (citation omitted). A motion for judgment on

22  the pleadings may be granted if, after assessing the complaint and matters for which judicial notice is

23  proper, it appears "beyond doubt that the [non-moving party] cannot prove any facts that would support

24  his claim for relief." *Morgan v. County of Yolo*, 436 F.Supp.2d 1152, 1155 (E.D. Cal. 2006), *aff'd,*277

25  Fed.Appx. 734 (9ᵗʰ Cir. 2008).

26      A fact subject to judicial notice is not subject to reasonable dispute because it "(1) is generally

27  known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined

28  from sources whose accuracy cannot be reasonably questioned." F.R.Evid. 201(b). A "court may take

4

1  judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 669, 689 (9th Cir.

2  2001).  Such a fact is  "conclusive" and "precludes either party from introducing evidence to disprove

3  that fact."  *Metropolitan Creditors' Trust v. Pricewaterhousecoopers, LLP*, 463 F.Supp.2d 1193, 1197

4  (E.D. Wash. 2006).

5       With these standards in mind, this Court turns to defendants' challenges to the FAC's claims.

6                          **ERISA Fiduciaries**

7       ERISA authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act

8  or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other

9  appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this

10  subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3) ("section 1132(a)(3)").

11       Defendants argue that they are not subject to ERISA liability in the absence of their discretionary,

12  and in turn, fiduciary duty to the plan.  Defendants rely on ERISA's definition of fiduciary, which

13  provides in part:

14       . . . a person is a fiduciary with respect to a plan to the extent (i) he exercises any
discretionary authority or discretionary control respecting management of such plan or

15  exercises any authority or control respecting management or disposition of its assets, (ii)
he renders investment advice for a fee or other compensation, direct or indirect, with

16  respect to any moneys or other property of such plan, or has any authority or
responsibility to do so, or (iii) he has any discretionary authority or discretionary

17  responsibility in the administration of such plan.

18  29 U.S.C. § 1002(21)(A).

19       Defendants identify their limited non-discretionary plan duties to sign a subscriber agreement,

20  to decide whether to include non-collectively bargained employees, to identify employees working more

21  than 80 hours, and to pay premiums for such employees.  Defendants assign all discretionary duties to

22  the trustees given that, according to the subscriber agreement, FFBB grants a power of attorney to the

23  trustees to administer the fund for FFBB.  Defendants disavow obligations to determiner employee

24  eligibility for medical benefits.

25       For further support, defendants rely on 29 C.F.R. § 2509.75-8, which identifies the following as

26  "purely ministerial functions":

27       1.     "Application of rules determining eligibility for participation or benefits";

28       2.     "Calculation of services and compensation credits for benefits";

3.    "Preparation of employee communications material";

4.    "Maintenance of participants' service and employment records";

5.    "Preparation of reports required by government agencies";

6.    "Calculation of benefits";

7.    "Orientation of new participants and advising participants of their rights and options under the plan";

8.    "Collection of contributions and application of contributions as provided in the plan";

9.    "Preparation of reports concerning participants' benefits";

10.    "Processing of claims"; and

11.    "Making recommendations to others for decisions with respect to plan administration." The regulation continues that a person who performs such functions "for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so."  Defendants conclude they are not plan fiduciaries.

The trustees respond that whether defendants are plan fiduciaries "makes no difference" in that section 1132(a)(3) entitles the trustees to "appropriate equitable relief" which the ERISA claims seek.

This Court agrees with the trustees in that "ERISA is available where the defendant 'actively and deliberately' misleads the plaintiff to the plaintiff's detriment."  *Northwest Adm'rs, Inc. v. Cutter*, 328 Fed.Appx. 577, 578 (9th Cir. 2009) (equitable restitution available for medical benefits paid for woman whom defendant misrepresented as his wife).  As such, this Court turns to merits of the FAC's claims.

### Equitable Restitution

Defendants contend that the FAC's (first) equitable restitution claim seeks legal relief which is unavailable under ERISA.  The trustees respond that section 1132(a)(3) authorizes the FAC's equitable restitution claim.

"ERISA does not authorize suits for money damages against non-fiduciaries who knowingly

1  participate in a fiduciary's breach of a fiduciary duty." *Trustees ex rel. Teamsters Benefit Trust v.*

2  *Doctors Medical Center of Modesto, Inc.*, 286 F.Supp.2d 1234, 1237 (N.D. Cal. 2003). Defendants

3  attribute the trustees to seek "nothing other than compensatory damages – monetary relief for all losses

4  their plan sustained as a result of the alleged breach of fiduciary duties. Money damages are, of course,

5  the classic form of legal relief." *Mertens v. Hewitt Associates*, 508 U.S. 248, 255, 113 S.Ct. 2063 (1993)

6  (affirming dismissal of claims by a class of pension plan participants for equitable relief against the

7  plan's actuary after the plan became insufficiently funded and was terminated).

8      Defendants contend that the trustees lack an equitable claim, such as a lien. Defendants

9  characterize the FAC's ERISA equitable restitution claim as a legal contract breach "by enrollment of

10  an ineligible employee." To decide whether requested restitutionary relief is equitable or legal, the U.S.

11  Supreme Court asks if the relief would have been equitable "[i]n the days of the divided bench." *Great-*

12  *West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212, 122 S.Ct. 708 (2002)). A "feature of

13  equitable restitution" is that it seeks "to impose a constructive trust or equitable lien on 'particular funds

14  or property in the defendant's possession.'" *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S.

15  356, 362, 126 S.Ct. 1869 (2006) (quoting *Knudson*, 534 U.S. at 213, 122 S.Ct. 708). A plaintiff "must

16  still establish that the basis for its claim is equitable." *Sereboff*, 547 U.S. at 363, 126 S.Ct. 1869.

17  Whether the remedy "is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature

18  of the underlying remedies sought." *Knudson*, 534 U.S. at 213, 122 S.Ct. 708.

19      Defendants dispute that the FAC's ERISA equitable restitution claim "would have been filed in

20  a court of equity." Defendants characterize the claim's "essence" as "a legal one, for damages caused

21  to the Plan by the alleged misconduct of the defendants" given the absence of allegations that defendants

22  "received funds which belonged to the Plan, which is the essence of the claim in equity."

23      The trustees argue that the key to the FAC's equitable restitution claim is "the allegation of

24  wrongdoing and fraud by defendants." The Ninth Circuit Court of Appeals has recognized the remedy

25  of restitution under section 1132(a)(3) in situations involving "ill-gotten gains," such as "money obtained

26  through fraud or wrongdoing." *Cement Masons Health and Welfare Trust Fund for Northern Cali. v.*

27  *Stone*, 197 F.3d 1003, 1006-07 (9th Cir.1999), *cert. denied*, 534 U.S. 1104, 122 S.Ct. 902 (2002); *see*

28  *also Carpenters Health and Welfare Trust for So. Cal. v. Vonderharr*, 384 F.3d 667, 671 (9th Cir. 2004),

1   *cert. denied*, 546 U.S. 1030, 126 S.Ct. 729 (2005); *Reynolds Metals Co. v. Ellis*, 202 F.3d 1246, 1249

2   (9th Cir.), *cert. denied*, 531 U.S. 1009, 121 S.Ct. 562 (2000).  The district court in *Cutter* addressed

3   defendant's misrepresentation of a woman as his wife to obtain medical benefits and explained:

4   > Plaintiff alleges fraud and/or wrongdoing by the Defendant in procuring medical benefits,
    > which the Supreme Court in *Mertens* and the Ninth Circuit in *Stone, Vonderharr*, and
5   > *Ellis* have explicitly recognized as giving rise to equitable relief under ERISA. . . .
    > Plaintiff's theory is that Defendant, through fraud or misrepresentation, appropriated
6   > money he was never entitled to; this is unjust enrichment with a remedy in equity.

7   *Northwest Adm'rs, Inc. v. Cutter*, 2008 WL 217731, at *6 (W.D. Wash. 2008), *aff'd*, 328 Fed.Appx. 577

8   (9th Cir. 2009).

9        The ERISA equitable restitution claim alleges that defendants "intentionally misrepresented" that

10  Ms. LeFevre was eligible for plan medical benefits although she did not meet plan requirements and that

11  the fund paid benefits for Ms. LeFevre in reliance on defendants' misrepresentations.  The FAC

12  adequately alleges that defendants falsified Ms. LeFevre's eligibility for benefits to entitle the trustees

13  to pursue equitable restitution.  Like *Cutter*, the FAC's theory is that defendants appropriated benefits

14  for which Ms. LeFevre was unqualified through fraud or misrepresentation.  The law has evolved in the

15  ERISA context to support an equitable restitution claim to recover benefits paid for someone ineligible

16  under an employee benefits plan.  Defendants are not entitled to dismissal of the ERISA equitable

17  restitution claim.

18       Moreover, defendants offer unavailing claims that their duty is limited to premium payments and

19  that they need not determine employee eligibility.  Such way of thinking would allow defendants to add

20  anyone to the plan without consequence.  ERISA purposes would be denigrated if an employer was

21  required only to remit premiums without confirming a person's eligibility under a plan.

22                                          **Surcharge**

23       Defendants challenge the FAC's (second) ERISA surcharge claim in that Mr. Lewis is not a

24  fiduciary subject to such claim.

25       Prior to the merger of law and equity, a monetary remedy against a trustee for money owed was

26  sometimes called a "surcharge" and was "exclusively equitable."  *CIGNA Corp. v. Amara*, __ U.S.

27  __,131 S.Ct. 1866, 1880 (2011) (citing *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456,

28  464, 59 S.Ct. 275 (1939)).  "Equity courts possessed the power to provide relief in the form of monetary

8

1   'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust

2   enrichment." *Amara*, __ U.S. __, 131 S.Ct. at 1880. "The surcharge remedy extended to a breach of

3   trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary."

4   *Amara*, __ U.S. __,131 S.Ct. at 1880; *see Mertens*, 508 U.S. at 2549-250, 113 S.Ct. 2063 (a nonfiduciary

5   who knowingly participates in the breach of a fiduciary duty imposed by ERISA is not liable for losses

6   that an employee benefit plan suffers as a result of the breach).

7      Defendants further challenge the surcharge claim in that FFBB, not Mr. Lewis, is a party to the

8   subscriber agreement for the fund and Mr. Lewis acted no more than as an agent for FFBB to complete

9   or to direct completion of billing statements.  Defendants contend that purported contract liability rests

10   with FFBB as a disclosed principal.

11      The trustees characterize surcharge "as a remedy traditionally extended by courts of equity and

12   therefore available under ERISA."  The trustees argue that surcharge is a proper remedy in that

13   defendants breached their duty to the fund "to accurately report the employees they determined were

14   eligible for benefits and not to report employees who were ineligible."  The trustees continue that

15   defendants were unjustly enriched by the fund's payment of Ms. LeFevre's medical expenses that

16   defendants otherwise would have paid to render surcharge an appropriate remedy to make the fund

17   whole.

18      There is no dispute that defendants were obligated to accurately report employees who qualified

19   for fund medical benefits.  *See* 29 U.S.C. § 1059(a).  The FAC alleges that defendants breached such

20   obligation.  However, based on the above authorities, the surcharge remedy may be imposed on trustees

21   in the ERISA context.  The FAC lacks facts that defendants qualify as trustees.  The FAC merely alleges:

22   "As a participant in the Fund, Defendant Lewis owed a fiduciary duty to all other participants in the

23   Fund not to engage or participate in a breach of trust."  The FAC lacks allegations to support imposition

24   of trustee or fiduciary duties on Mr. Lewis to support a surcharge remedy.  As such, the ERISA

25   surcharge claim is subject to dismissal with leave to amend.

### ERISA Preemption

27      Defendants argues that ERISA preempts the FAC's common law claims for fraud deceit and

28   negligent misrepresentation.

1    "ERISA is a remedial statute which Congress enacted to protect employee pension benefit rights

2    and to protect employers from conflicting and inconsistent state and local regulations of pension benefit

3    plans." *Shaw v. Delta Air Lines*, 463 U.S. 85, 90-91, 103 S.Ct. 2890, 2896-97, 77 L.Ed.2d 490 (1983).

4    ERISA's preemption clause states that ERISA's provisions "shall supersede any and all State laws

5    insofar as they may now or hereafter relate to any employee benefit plan . . ." 29 U.S.C. § 1144(a).

6    ERISA's preemption clause is "deliberately expansive," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-

7    46, 107 S.Ct. 1549 (1987), and "contains one of the broadest preemption clauses ever enacted by

8    Congress." *Spain v. Aetna Life Ins. Co.*, 11 F.3d 129, 131 (9th Cir. 1993) (citations omitted), *cert.*

9    *denied*, 511 U.S. 1052, 114 S.Ct. 1612 (1994).

10    The U.S. Supreme Court has emphasized the broad sweep of ERISA preemption:

11    "The pre-emption clause is conspicuous for its breadth." Its "deliberately expansive"
      language was "designed to 'establish pension plan regulation as exclusively a federal
12    concern.' " The key to § 514(a) is found in the words "relate to." Congress used those
      words in their broad sense, rejecting more limited pre-emption language that would have
13    made the clause "applicable only to state laws relating to the specific subjects covered
      by ERISA."

14

15    *Ingersoll-Rand v. McClendon*, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) (citations

16    omitted).

17    The Ninth Circuit likewise endorses a broad view of ERISA preemption and has held that

18    "ERISA preempts common law theories of breach of contract implied in fact, promissory estoppel,

19    estoppel by conduct, fraud and deceit, and breach of contract." *Ellenburg v. Brockway, Inc.*, 763 F.2d

20    1091, 1095 (9th Cir.1985) (citing *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1356-57 (9th Cir.1984), *cert.*

21    *denied*, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985)).

22    The trustees argue that ERISA does not preempt the FAC's fraud claims in that they are

23    "consistent with the purposes of ERISA" and neither interfere with nor compromise federal regulation

24    of employee benefit plans.  The trustees point to *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18 (2nd

25    Cir.1996), where the Second Circuit Court of Appeals allowed benefit plan trustees to sue an employer

26    who fraudulently obtained benefits for the girlfriend of an officer although she was not an employee and

27    therefore ineligible for benefits. The Second Circuit permitted common law claims for fraud and

28    restitution, rejecting the district court's conclusion that the claims "related to" the ERISA plan because

10

1   they "arose directly out of the allegedly improper administration of the plan." *Geller*, 86 F.3d at 22. The

2   Second Circuit concluded that the fraud claim would not "compromise the purpose of Congress" and

3   would not "impede federal control over the regulation of employee benefit plans." *Geller*, 86 F.3d at 23.

4   The Second Circuit continued: "The unauthorized diminution of pension benefits – in the present case,

5   the outright squandering of funds – is squarely at odds with the congressional purpose of protecting

6   pension benefits." *Geller*, 86 F.3d at 23.

7        The trustees also rely on *Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765 (7th Cir. 2002),

8   where the Seventh Circuit Court of Appeals permitted fund trustees' common law fraud claims against

9   a plan participant who misrepresented that he was married to his former wife to secure dependent

10  coverage for her.  The Seventh Circuit concluded that the trustees' fraud claims were not preempted in

11  that the fraud claims sought "to recoup monies that the Fund improperly expended as a result of a plan

12  participant's fraudulent conduct" and "to protect the financial integrity of the Fund, which is certainly

13  in the Plan Participants' and beneficiaries' best interests, as well as being consistent with the Trustees'

14  fiduciary obligations under ERISA." *Biondi*, 303 F.3d at 775.

15       The parties point to no Ninth Circuit Court of Appeals authority on the precise preemption issue,

16  and this Court is aware of none.  Nonetheless, the rationale of the Second and Seventh Circuits is

17  convincing.  The trustees seek to recover monies which the fund paid based on the alleged

18  misrepresented eligibility of Ms. LeFevre.  The FAC's fraud claims attempt to protect the fund's

19  integrity and the best interests of its beneficiaries.  Defendants fail to demonstrate how the FAC's fraud

20  claims erode ERISA purposes.  The fraud claims are not subject to dismissal.

21                    **CONCLUSION AND ORDER**

22       For the reasons discussed above, this Court:

23  1.   DENIES F.R.Civ.P. 12(c) relief as to the FAC's (first) ERISA equitable restitution,

24       (third) fraudulent deceit and (fourth) negligent misrepresentation claims;

25  2.   DISMISSES with leave to amend the FAC's (second) ERISA surcharge claim;

26  3.   ORDERS the trustees, no later than August 8, 2012, to file and serve either (a) a second

27       amended complaint to amend only the (second) ERISA surcharge claim; or (b) a

28       statement that the trustees will not pursue an ERISA surcharge claim and will proceed

on their other claims as pled in the FAC. Unless this Court orders otherwise, the trustees are not permitted to amend or alter the (first) ERISA equitable restitution, (third) fraudulent deceit, and (fourth) negligent misrepresentation claims; and

4.     ORDERS defendants, no later than August 24, 2012, to file and serve their response to the trustees' second amended complaint, or the FAC, if the trustees elect not to amend the (second) ERISA surcharge claim.  Unless this Court orders otherwise, defendants are not permitted to pursue a F.R.Civ.P. 12 challenge to the (first) ERISA equitable restitution, (third) fraudulent deceit, and (fourth) negligent misrepresentation claims.

IT IS SO ORDERED.

**Dated:    July 24, 2012**                    /s/ Lawrence J. O'Neill
                                       UNITED STATES DISTRICT JUDGE